UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RONALD L. GRAY, JR., )<br>)<br>    *Plaintiff* )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>**Commissioner of Social Security,** )<br>)<br>    *Defendant* ) | *Docket No. 04-207-B-W* |

***REPORT AND RECOMMENDED DECISION*[1]**

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the questions whether the administrative law judge properly treated a claim of mental impairment, whether he properly evaluated the plaintiff's physical impairments and whether any of the jobs identified by the vocational expert as jobs which the plaintiff could perform were consistent with his limitations as found by the administrative law judge. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had coronary artery disease, status post-April 2002 myocardial infarction with stent placement, a severe impairment which does not meet

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on
(*continued on next page*)

or medically equal the criteria of any impairment included in Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"), Findings 2-3, Record at 27; that the plaintiff's allegations regarding his limitations were not totally credible, Finding 4, *id*.; that he retained the residual functional capacity to perform the physical demands of work at the sedentary exertional level, Finding 6, *id*.; that he was unable to return to his past relevant work, Finding 8, *id*. at 28; that, given his age ("younger individual"), education (high school) and residual functional capacity to perform a significant range of sedentary work, the use of Rule 201.28 from Appendix 2 to Subpart P, 20 C.F.R. Part 2 (the "Grid") as a framework for decision-making resulted in a finding that there were a significant number of jobs in the regional and national economies that the plaintiff could perform, Findings 9-12, *id*.; and that therefore the plaintiff was not under a disability, as that term is defined in the Social Security Act, at any time through the date of the decision, Finding 13, *id*. After considering additional evidence submitted by the plaintiff, the Appeals Council declined to review the decision, *id*. at 6-9, making it the final determination of the commissioner, 20 C.F.R. §§ 404-981, 416.1481; *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusions drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her

---

August 5, 2005, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with (*continued on next page*)

past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

**Discussion**

**A.  Mental Impairment**

The plaintiff contends that the administrative law judge failed to comply with 20 C.F.R. § 404.1520a (and, presumably, 20 C.F.R. § 416.920a) when evaluating his claimed mental impairments[2] and improperly dismissed the limitations assigned by Takeo Kawamura, M.D.  Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 10) at 1-5.  The cited regulation provides, in relevant part:

> (a) *General*.  [W]hen we evaluate the severity of mental impairments for adults . . ., we must follow a special technique at each level in the administrative review process.

---

citations to relevant statutes, regulations, case authority and page references to the administrative record.

[2] The plaintiff states that "[t]he ALJ mentioned the claimant's depression specifically, but never made the analysis required by the regulation of his other mental limitations." Itemized Statement at 2.  Just what the "other mental limitations" are is impossible to discern from the plaintiff's itemized statement.  Depression was the only mental impairment mentioned by the attorney for the plaintiff at the hearing before the administrative law judge.  Record at 39-40.  The plaintiff's initial application does not mention any mental impairment.  *Id*. at 137-45.  His request for reconsideration of the initial denial of his claim for benefits did state that his "short term memory is very poor" and that he was "on antidepressant & seeing therapist."  *Id*. at 146.  The plaintiff's presentation to the Appeals Council mentions only depression as a possible mental impairment.  *Id*. at 395-96.  At oral argument, when asked what "other mental limitations" the Itemized Statement referred to, counsel for the plaintiff stated that "some form of learning disability" was present and a "mental limitation following the cardiac events" was "not precisely delineated" in the record but would be "consistent with what Dr. Benson says about [the plaintiff's] limitations."  Neither alleged limitation was sufficiently identified in the plaintiff's itemized statement to be properly before this court.  *See Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990).  Even if that were not the case, the only medical evidence of any additional mental limitations resulting from the plaintiff's "cardiac events" was the statement of Dr. Benson, a family practitioner, that the plaintiff's cardiac symptoms would interfere with his attention and concentration occasionally — 6 to 33% of an 8-hour working day.  Record at 277-78.  This conclusion is inconsistent with the findings of the state-agency psychologist who completed a psychiatric review technique form a month later finding only mild difficulties in maintaining concentration, persistence or pace.  *Id*. at 362, 372.  It therefore cannot provide the basis for remand.  Contrary to the argument of counsel, Dr. Benson's statement in a letter that the plaintiff "has always been a slow learner and had special education classes throughout school.  He is a very slow reader . . . ," *id*. at 274, is not enough evidence to require the administrative law judge to find that the plaintiff suffered from a learning disability that was not mentioned in any of the plaintiff's submissions to the agency.  Counsel for the plaintiff mentioned his testimony at the hearing as additional evidence of a learning disability, but only medical evidence may be considered in the course of determining whether a claimant suffers from a particular impairment.  20 C.F.R. §§ 404.1508, 416.908.

> \* \* \*
>
> (b) *Use of the technique.* (1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). . . .  If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings as set out in paragraph (e) of this section.
>
> \* \* \*
>
> (e) *Documenting application of the technique.* . . . At the administrative law judge hearing and Appeals Council levels . . ., we will document application of the technique in the decision.
>
> \* \* \*
>
> (2) At the administrative law judge hearing and Appeals Council levels, the written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique.  The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a, 416.920a.

The administrative law judge addressed the plaintiff's claim of depression as a mental impairment as follows:

> The claimant's additional alleged impairments of depression and sleep apnea are not established in the record as severe impairments.  Treatment records from the medical practice of Takeo Kawamura, M.D., and Nevalee Rohrer, D.O., establish significant improvement in the claimant's reactive depression and anxiety following his myocardial infarction.  As a result of his October 2002 initial psychiatric evaluation, Dr. Kawamura corroborated a diagnosis of major depressive disorder, single episode, severe; . . . and a current Global Assessment of Functioning (GAF) of 50, indicative of serious symptoms or serious impairment in social or occupational [sic] (e.g., no friends, unable to keep a job), with a GAF over the past year of 80.  Individuals with this GAF are described as having symptoms that, if present, are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social or occupational functioning.  Dr. Kawamura also noted that his sleep was disturbed, a circumstance which improved over the ensuing months.

4

> By November 2002, the claimant was reported by Dr. Rohrer as having an improved affect and better mood. Dr. Rohrer also noted that his thoughts were clear and organized. In December 2002, Dr. Rohrer re-evaluated the claimant who said that he was "doing fine mentally & physically." He stated that he was content to do chores at home and had enrolled for another semester of college classes. Dr. Rohrer described his insight and judgment as being good. Still further improvement was seen in January 2003 when Dr. Rohrer stated that the claimant's mood was stable, with decreased depression and decreased anxiety. She said that the claimant and his wife both felt that he no longer required mental health treatment. Dr. Rohrer noted that his mood was euthymic,[3] his affect calm, and his thoughts clear and focused (Exhibit 6F).
>
> The undersigned agrees with the Disability Determination Services (DDS) assessment completed in February 2003 by David Houston, Ph.D., and finds that the claimant has depression which does not constitute a severe impairment since it results in Part B functional limitations that are no more than mild in the areas of activities of daily living, social functioning, and concentration (Exhibit 10F).

Record at 23-24. The administrative law judge's discussion of the medical evidence would support a conclusion that the plaintiff's depression was no longer an impairment, if it ever was. *See* 20 C.F.R. §§ 404.1509, 416.909 (impairment must have lasted or must be expected to last for continuous period of at least 12 months). In that case, the requirements of sections 404.1520a and 416.920a do not apply at all. However, the administrative law judge found in this case that the depression was an impairment, concluding that it was not severe. Under these circumstances, the requirements of the regulations do apply.

The administrative law judge did make a specific finding as to the degree of limitation in each of the functional areas described in subsection (c) of these regulations. He also set forth the significant history of the plaintiff's depression, the examinations by Drs. Kawamura and Rohrer and the plaintiff's signs and symptoms, to the extent that evidence of those signs and symptoms was present in the record. The administrative law judge did not discuss any laboratory findings, but none are

---

[3] Characterized by joyfulness, mental peace and tranquility; not manic or depressed. *Stedman's Medical Dictionary* (27th ed. 2000) (*continued on next page*)

apparent in the record.  Accordingly, I conclude that the administrative law judge complied with 20 C.F.R. §§ 404.1520a and 416.920a.

The plaintiff contends, Itemized Statement at 4, that the administrative law judge failed to consider with respect to a mental impairment the notes of Jean S. Benson, M.D., a family practitioner, who noted that the plaintiff "has always been a slow learner" and "has impaired short-term memory" and checked the box next to "Capable of low stress jobs" on a form dated January 22, 2003, Record at 274, 277-78.  It is clear from the context of Dr. Benson's letter dated January 18, 2003 that Dr. Benson considers the slow learning and short-term memory to be the results of physical impairments or abuse, rather than any mental impairment.  *Id*. at 274.  Similarly, the "low stress" box appears in a range of alternatives under the general consideration of the role of stress in bringing on the plaintiff's physical symptoms.  This check mark cannot serve as evidence of a mental impairment.  This conclusion is bolstered by the fact that the final note by Dr. Rohrer, a psychotherapist, dated January 16, 2003, finds that the plaintiff's depression and anxiety are decreased, the plaintiff and his wife both felt that there was no need to continue therapy, the plaintiff was handling stress well, his mood was euthymic, his affect calm, his thoughts clear and focused and his insight and judgment good.  *Id.* at 261.

The plaintiff also asserts that "Dr. Benson's form of June 12, 2004" demonstrates that Dr. Rohrer's conclusion that the plaintiff's "mental problem" had resolved was in error.  Itemized Statement at 4.  The form to which he refers was submitted directly to the Appeals Council by the plaintiff's attorney by letter dated August 11, 2004, Record at 11,[4] six months after the administrative law judge issued his decision, *id*. at 28, and obviously could not have been considered by the administrative law judge.  There is no indication in the record that it was considered by the Appeals Council, which notified the plaintiff of its decision not to review the administrative law judge's

---

at 627.

conclusions by letter dated October 22, 2004. *Id*. at 6.[5] In any event, this court will not review evidence presented for the first time to the Appeals Council when the Appeals Council denies review. *Mills v. Apfel*, 84 F.Supp.2d 146, 148 (D. Me. 2000). That is what happened in this case. The plaintiff is not entitled to remand on any of the arguments he raises with respect to his alleged mental impairments.

### B. Physical Impairments

The plaintiff contends that the administrative law judge failed to give the opinion of his treating physician, Dr. Benson, appropriate weight in assessing the limitations caused by "his collective problems." Itemized Statement at 5. He asserts that the administrative law judge "did not correctly discount the treating physician's opinion or properly choose the competing RFC of the DDS examiner" because his analysis "was not accompanied by legitimate reasons for varying from the treating source's medical source [sic] opinion." *Id*. at 6.

The administrative law judge discussed Dr. Benson's notes in some detail. Record at 24.[6] He then stated that he "concur[red] with the November 2002 assessment by Dr. Hall, the DDS examining physician,[7] in which he stated that the 'near constant' chest pain alleged by the claimant is not typical for pain of cardiac origin." *Id*. The administrative law judge then discussed Dr. Hall's specific findings. *Id*. Dr. Hall also observed that "[i]n general, we [he and Dr. Benson] (+ this RFC) agree that a 'physically demanding job' is inappropriate." *Id*. at 259.

---

[4] The letter merely asks the Appeals Council to "associate" the form filled out by Dr. Benson "with Mr. Gray's file." Record at 11.
[5] At oral argument, counsel for the plaintiff contended that the Appeals Council had reviewed Dr. Benson's form, because its notice states that it "considered . . . the additional evidence listed on the enclosed Order of Appeals Council," Record at 6, and that the fact that the Appeals Council considered the form distinguishes this case from *Mills*. Such a distinction is not supported by *Mills*, 84 F.Supp.2d at 148. In addition, the form completed by Dr. Benson is not listed in the Order of Appeals Council, Record at 10, and AC Exhibits List, *id*. at 5, so there is no evidence that the Appeals Council considered it.
[6] All of the pages of the record cited by the plaintiff in his discussion of Dr. Benson's opinions, Itemized Statement at 5, are included in Exhibit 7F, to which the administrative law judge refers, Record at 24.
[7] Dr. Hall did not examine the plaintiff. Record at 253-60.

7

The plaintiff contends that the administrative law judge failed to comply with 20 C.F.R. § 404.1527(d)(2) (and 416.927(d)(2)) and Social Security Ruling 96-02p in his treatment of Dr. Benson's opinions.[8]  Itemized Statement at 6.  The cited regulation provides that, generally, the commissioner will give more weight to opinions from treating sources and that, when the treating source's opinion is not given controlling weight, the commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2).  Contrary to the plaintiff's assertion, Itemized Statement at 6-7, this regulation does not require an administrative law judge to describe in writing his application of the factors listed in 20 C.F.R. §§ 404.1527(d)(2)-(6) and 416.927(d)(2)-(6) in determining the weight given to a treating source's opinion.  All that the regulation specifically requires to be stated in writing is the "good reasons" for the assigned weight.  Here, the administrative law judge noted that the plaintiff's testimony concerning his activities of daily living were inconsistent with the degree of impairment set forth by Dr. Benson, Record at 26, in addition to his citation of Dr. Hall's specific findings, *id*. at 24.  The administrative law judge's statement of reasons is minimal at best.

However, any insufficiency in this regard constitutes harmless error because  Dr. Benson's opinions concerning the plaintiff's physical limitations are not inconsistent with the residual functional capacity assigned by the administrative law judge.  Dr. Benson's October 12, 2002 opinion that the plaintiff "will be disable[d] for at least a year and very possibly, permanently disabled" is tied to his "understanding" that the plaintiff's "learning disabilities" make it unlikely that he will progress rapidly in an attempt to go back to school.  *Id*. at 288-899.  With respect to the physical symptoms or limitations listed by Dr. Benson in that letter, he opines only that it is "unlikely that this gentleman will

---

[8] Because the plaintiff does not contend that the administrative law judge should have given Dr. Benson's opinions controlling weight, his citation of Social Security Ruling 96-2p, which is entitled "Giving Controlling Weight to Treating Source Medical Opinions," Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2004-2005) at 111-15, provides no
(*continued on next page*)

8

return to work in any physically demanding job." *Id*. at 288. In a later letter, dated January 18, 2003, Dr. Benson stated that he advised the plaintiff not to "engage in his prior activity of driving a fuel truck across Maine's highways" and speculates that due to the plaintiff's slow reading, slow learning and impaired short-term memory, combined with his "depression with chronic anxiety," Dr. Benson "wonder[s] if [the plaintiff] will be able to learn a new occupation at all." *Id*. at 274. This is simply not a statement of physical limitations, and certainly not a statement of physical limitations that is inconsistent with the residual functional capacity assigned by the administrative law judge.

The plaintiff also mentions some of the findings of Robert C. Capodilupo, M.D., Itemized Statement at 5-6, although it is not clear why he mentions them. Dr. Capodilupo's report, written after a single visit from the plaintiff at the request of the attorney then representing him in connection with his Social Security claims,[9] Record at 404, states that the doctor "do[es] not believe [the plaintiff] has any marked limitation on physical activity," records the plaintiff's statements about his physical limitations, and concludes that "any job with significant physical activity he would not be able to do and any job with significant stress he would not be able to do, as well," *id*. at 405. These conclusions are not necessarily inconsistent with a residual functional capacity for sedentary work, which is defined as involving lifting no more than 10 pounds at a time and involving sitting and on occasion a certain amount of walking and standing. 20 C.F.R. §§ 404.1567(a) & 416.967(a).

The plaintiff's next argument is that the administrative law judge did not "accurately transmit the clarified medical output to the VE in the form of assumptions." Itemized Statement at 7.[10] The

---

guidance for the evaluation of his claim in this regard.

[9] It was the third time overall that Dr. Capodilupo had seen the plaintiff. Record at 403.

[10] The plaintiff's speculation that, because the administrative law judge asked the vocational expert three hypothetical questions, he must have been "not satisfied with [the] result" of his second hypothetical question, Itemized Statement at 7-8, adds nothing to his request for a remand. Particularly where, as here, the only difference between the second and third hypothetical questions was a change in educational attainment from "limited" to "high school level," *id*. at 8 — a change which the plaintiff wisely does not challenge, since he testified that he graduated from high school and had taken a college course, Record at 54-56 — such speculation is clearly inappropriate.

9

plaintiff states that the administrative law judge's first hypothetical question "considered the limitations suggested by Dr. Benson." *Id*. That question, therefore, must not have failed to transmit accurate "medical output" to the vocational expert. The plaintiff does not describe how the second and third hypothetical questions failed to transmit accurate medical information. If he means to assert that the opinions of Dr. Benson, which I have already discussed, should have been included in the second and third hypothetical questions as well as the first, the argument is merely a restatement of his earlier contention that the residual functional capacity assigned by the administrative law judge could not stand because its departures from Dr. Benson's limitations were not adequately explained.[11]

The plaintiff's final challenge is to the specific jobs identified by the vocational expert as being available to an individual with the limitations included in the administrative law judge's third hypothetical question. Itemized Statement at 8-9. He asserts that the administrative law judge "adopted" three of the jobs listed by the vocational expert in her answer to the third hypothetical question. *Id*. at 8. In his opinion, the administrative law judge listed three of the jobs identified by the vocational expert in response to this question. Record at 26-27. Because he also stated that "the claimant has non-exertional limitations from his coronary impairment, primarily fatigue, which somewhat diminish the occupational base," *id*. at 26, the administrative law judge must be deemed to have relied on the vocational expert's testimony about the three listed jobs. *See Falcon-Cartagena v. Commissioner of Soc. Sec.*, 21 Fed.Appx. 11, 13 (1st Cir. 2001); *Gonzalez v. Commissioner of Soc. Sec.*, 230 F.3d 1347 (table), 2000 WL 1502864 (1st Cir. Oct. 5, 2000), at **1; *Ortiz v. Secretary of*

---

[11] At oral argument, counsel for the plaintiff contended that the hypothetical questions posed to the vocational expert should have included the fatigue mentioned by the administrative law judge as a non-exertional impairment which would "somewhat diminish the occupational base." Record at 26. This was not included in the administrative law judge's specific findings, *id*. at 26-27, and therefore it is not at all clear that fatigue should have been included in the hypothetical questions. In any event, this additional limitation is not mentioned in the plaintiff's itemized statement and must be deemed to have been waived. It is also significant that counsel did not cite any medical evidence that would support a specific limitation arising from fatigue.

10

*Health & Human Servs.,* 890 F.2d 520, 524-25 (1st Cir. 1989); *see generally* Social Security Ruling 83-14, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 44-45.

The plaintiff argues, in conclusory fashion, that "the analysis mandated by Ruling 96-9p" eliminates two of the three identified jobs.  Itemized Statement at 8.  I see no conflict between the administrative law judge's opinion and any analytical process that may be "mandated" by the Ruling,[12] but the inquiry does not end there.   The Ruling states that the sedentary occupational base includes "the full range of unskilled sedentary occupations administratively noticed" and that this base "may be broadened by the addition of specific skilled or semiskilled occupations that an individual with an RFC limited to sedentary work can perform by reason of his . . . education or work experience."  SSR 96-9p at 155.  If the individual has no transferable skills and no education or training that provides for direct entry into skilled work, the occupational base available includes only unskilled work.  *Id.*  In this case, the plaintiff contends that two of the three jobs identified by the vocational expert and listed in the administrative law judge's opinion are skilled or semi-skilled and therefore not within the sedentary occupational base.  Itemized Statement at 8.  Those jobs are telemarketer, with a Dictionary of Occupational Titles ("DOT") code of 299.357-014, and museum scheduler, DOT code 238.367-034.  Record at 27, 69-70, 71.

As the plaintiff points out, Itemized Statement at 8, these two jobs carry a Specific Vocational Preparation ("SVP") level of 3.  *Dictionary of Occupational Titles* (U.S. Dep't of Labor, 4th ed. rev. 1991), §§ 238.237-034, 299.357-014.  An SVP level of 3 is inconsistent with unskilled work.  Social Security Ruling 00-4p ("SSR 00-4p"), reprinted in *West's Social Security Reporting Service* Rulings

---

[12] The Ruling requires the administrative law judge to exercise "adjudicative judgment regarding factors such as the type and extent of the individual's limitations . . . and the extent of the erosion of the  occupational base; i.e., the impact of the limitations . . . on the number of sedentary unskilled occupations or the total number of jobs to which the individual may be able to adjust, considering his  . . . age, education, and work experience . . . . Where there is more than a slight impact on the individual's ability to perform the full range of sedentary work, if the adjudicator finds that the individual is able to do other work, the adjudicator must cite examples of (*continued on next page*)

(Supp. 2004), at 245. The administrative law judge in this case did not find that the plaintiff had any transferable skills or education or training that would prepare him for direct entry into either of these two jobs.[13] The administrative law judge failed to identify and address this conflict with the DOT as required. SSR 00-4p at 243 ("[B]efore relying on VE or VS evidence to support a disability determination or decision, our adjudicators must . . . [i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the [DOT]" and "[e]xplain in the determination or decision how any conflict that has been identified was resolved"). The remaining job listed by the administrative law judge, food and beverage order clerk, has an SVP of 2, *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991), § 209.567-014, and thus does not suffer from the evidentiary infirmity of the first two jobs.

    The plaintiff contends that the job of food and beverage order clerk is not available to him because it requires frequent handling and reaching and has a general educational development ("GED") level that "is beyond the abilities of this claimant, given the marked mental limitations described by Dr. Kawamura (R. 268) and by Dr. Benson (R.12)." Itemized Statement at 8. Frequent reaching and handling are among the physical demands of the order clerk job as described in the DOT. However, the statement of Dr. Capodilupo cited by the plaintiff as his only support for his contention that he is incapable of frequent reaching and handling was not adopted by the administrative law judge. Dr. Capodilupo stated: "If the patient has a job using his arms excessively, that may aggravate his angina as he would likely need more energy to use his arms." Record at 405. The administrative

---

occupations or jobs the individual can do . . . ." Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2004), at 156.

[13] At oral argument, counsel for the commissioner contended that non-specific skills acquired in work at a higher exertional level are transferable to work at a lower exertional level, so that there was no conflict here. He cited 20 C.F.R. § 404.1568 in support of this assertion. However, that regulation cannot reasonably be read to automatically insert into every administrative law judge's opinion that finds that a claimant is capable of work at an exertional level lower than that of his past relevant work, *sub silentio*, a finding that the claimant has transferable skills. The regulation requires a specific and detailed analysis, none of which is present in the opinion in this case.

law judge noted that Dr. Capodilupo "would limit the claimant from any job that involves significant physical activity or significant stress" and observed that "[t]his statement allows for a considerable range of potential work that would be available to the claimant." *Id*. at 24.  I cannot conclude that reaching and handling from 1/3 to 2/3 of the time on the job necessarily constitutes "excessive" use of the arms.  At oral argument, counsel for the plaintiff was unable to cite any authority for his argument to the contrary.

The order clerk job is assigned a GED reasoning level of 3 — "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations." DOT § 209.567-014.  The plaintiff asserts that this requirement makes the job unavailable to him, Itemized Statement at 8, because Dr. Kawamura opined that he would be "unable to meet competitive standards" in understanding and remembering detailed instructions and in carrying out detailed instructions, Record at 268.[14]  The problem for the plaintiff here is that the administrative law judge did not adopt the mental limitations listed by Dr. Kawamura, relying instead on the findings of Dr. Rohrer in subsequent months that the plaintiff's mental condition had improved to the point where "his thoughts were clear and organized" and "clear and focused." *Id*. at 23.  I have concluded, for the reasons discussed above, that the administrative law judge's choice to adopt Dr. Rohrer's findings instead of those of Dr. Kawamura was not an error.  Accordingly, Dr. Kawamura's statement of mental limitations cannot provide a basis for rejecting the order clerk position due to its GED reasoning level of 3.[15]

---

[14] The plaintiff also contends that Dr. Kawamura's opinion that he would have "no useful ability to function" in performing at a consistent pace, Record at 268, is inconsistent with a GED reasoning level of 3, Itemized Statement at 8, but the ability to perform at a consistent pace is not relevant to the use of common sense, understanding of instructions or dealing with problems in standardized situations.  The two are separate considerations in the field of Social Security law.

[15] The plaintiff also relies on the limitations mentioned in the medical source statement provided to the Appeals Council six months after the administrative law judge issued his decision. Itemized Statement at 8.  As noted earlier in this recommended decision, this court will not consider that document as evidence.

13

The plaintiff's final contention is that the order clerk job "is also beyond his GED language level as described in Appendix C to the DOT." Itemized Statement at 8-9. He quotes the description from Appendix C, *id*. at 9 n.1, but goes no further. He makes no attempt to demonstrate how "his GED language level" is inconsistent with the Appendix's definition of the GED language level of 2 which is the level assigned to the order clerk position. He cites nothing in the record, so there is no way in which a reviewing court could determine what medical evidence might be relevant to this issue. Such an undeveloped argument will not be considered by this court. *Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990).

The plaintiff asserts that "the VE candidly testified that the claimant was unsuitable for DOT defined job [sic]." Itemized Statement at 9. He contends that her comments at pages 73-74 of the record "simply underscore the lack of a DOT defined job appropriate to [the plaintiff's] limitations" This presentation mischaracterizes the vocational expert's testimony. After she had responded to the administrative law judge's hypothetical questions and listed available jobs for the plaintiff, some of which were adopted by the administrative law judge, the vocational expert was asked by the administrative law judge

> Well, I have a question for you. You know, in this analysis they want it, you know, they don't want it to be an abstract thing. They, you know, the regulations are intended to say is here we have a guy who was a truck driver all his life and now he can't do that. And, you know, based on your training and experience where would you send him?

Record at 73. What a vocational expert as an individual might do for a particular individual in a role other than that of an expert witness in an administrative proceeding is not relevant to the questions before an administrative judge who is deciding whether that individual qualifies for Social Security benefits. It is interesting, however, that the vocational expert responded that she would ask that

14

person's employer to put him into a position as a receptionist or appointment clerk, jobs which are similar to the order clerk position that is at issue in this case. *Id*. at 73-74.

Because one of the jobs listed by the administrative law judge has not been shown to be outside the physical and mental limitations found by him to exist, the plaintiff is not entitled to remand pursuant to his DOT-based arguments.

### Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 9th day of August, 2005.

                                          /s/ David M. Cohen
                                          David M. Cohen
                                          United States Magistrate Judge